IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA          *

    v.          *          CRIMINAL NO.: WDQ-10-0799

                        *

LOXLY JOHNSON, *et al.*          *

                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*
MEMORANDUM

Loxly Johnson and Shenika Graves are charged with
conspiracy to import heroin and cocaine, in violation of 21
U.S.C. § 963. On Tuesday, December 6, 2011, the Court heard
testimony and arguments on several pending motions.[1] For the
following reasons, the Court will deny the motions to suppress
Graves's statements and evidence found in her purse and in the
Envoy. The Court will deny as moot Johnson's motion to suppress
his statements.

I.   Background

On December 17, 2010, the ship security officer for the
Royal Caribbean M/V Enchantment of the Seas told United States
Immigration and Customs Enforcement ("ICE") agents that Gavin

---

[1] Pending are Johnson's motion to suppress and Graves's motions
to suppress statements and search, sever defendant, produce
pretrial services and probation department reports, for
restrictions on use of plea and cooperation agreements, for
disclosure of co-conspirator statements, and to adopt motion of
other defendants, and Neptune's motions to suppress and sever
defendant. ECF Nos. 45, 49.

Excell and other crew members might be smuggling narcotics on the ship. ECF No. 64 at 1. The next day, agents of the ICE Homeland Security Investigations ("HSI") Seaport Group co-ordinated with Customs and Border Protection to inspect the ship's crew members when they arrived in Baltimore. *Id.*

At about 9:00 a.m., the crew was allowed to disembark. Searching Excell, agents found three packages: one wrapped in duct tape in his pants and two molded to fit into his shoes. The package in his pants contained about 700 grams of heroin. The packages in his shoes contained a total of about 300 grams of cocaine. *Id.* at 2; ECF No. 28 ¶4.

After he was arrested and waived his *Miranda* rights, Excell stated that he had picked up the drugs in Jamaica or the Dominican Republic with fellow crew members John Swart Garth and an individual he knew as Kishurn (later identified as Kishurn Neptune), and he was to deliver them to someone called "Tony" at a nearby Wal-Mart. ECF No. 28 ¶5; Testimony of Roger Cochran [hereinafter "Cochran Test."]. "Tony's" phone number was 757-236-6211. Excell's phone also contained the number 757-576-2843 for Tony, which was linked in a national database to Latoya Johnson. Cochran Test. The 757 area code is for Norfolk, Virginia. *Id.*

Detective Ronald Copeland, an ICE Task Force Officer, went to the Wal-Mart parking lot, and found a black GMC Envoy with

2

Virginia plates XLF 8696 ("the Envoy").[2] The vehicle was registered to Latoya M. Johnson. Officers saw a male, later identified as Loxly Johnson ("Johnson"), and a female, later identified as Graves, inside the Envoy. ECF No. 64 at 3. At about 10:15 a.m., another male, later identified as Garth, walked up to the driver's window of the Envoy, spoke with the driver for a moment, then walked around to the rear passenger door, opened it and entered the car. *Id.* at 2; Testimony of Ronald Copeland [hereinafter "Copeland Test."]. Copeland saw Garth, sitting in the back seat, bend his torso forward and reach toward the floorboard "like he[ was] messing with his shoes." Copeland Test. After a few minutes, Garth walked into the Wal-Mart; later he left Wal-Mart and boarded a van used by cruise ship crew members. *Id.*

At about 10:45 a.m., Johnson left the Envoy, entered the Wal-Mart and was followed ten minutes later by Graves. ECF No. 64 at 3; Copeland Test. Over the next hour, Johnson and Graves stayed inside Wal-Mart, periodically scanning the parking lot from the entrance to the store. Copeland Test. Graves once returned to the Envoy, sat in the driver's seat for about 15 to 20 minutes, then walked back to Wal-Mart. *Id.*

---

[2] He focused on the car because Tony's phone number had a Virginia area code. Testimony of Ronald Copeland [hereinafter "Copeland Test."].

At about 11:30 a.m., Graves returned to the car and moved it to another part of the lot while talking on her cell phone. ECF No. 64 at 3; Copeland Test. Agents saw Neptune wearing a Royal Carribean jacket in the Wal-Mart parking lot; he walked around the agents' car and stared directly at Officer Copeland; the officer understood him to be conducting counter-surveillance. Copeland Test. Soon after, Copeland saw Neptune, Graves, and possibly Johnson standing with their backs to each other for several minutes just outside the entrance to Wal-Mart.

At about 12:30 p.m., Excell made two controlled, recorded calls to "Tony" under law enforcement supervision.[3] On the second call, "Tony" answered; Excell told him that he had been delayed by an immigration check, but he could be at Wal-Mart in 15 minutes. "Tony" responded that he was at Wal-Mart, but he had to leave and could not accept drugs there because the area was "hot." "Tony" said he would call Excell back, and ended the call. *Id.*; Cochran Test.

At about 12:45 p.m., Johnson left Wal-Mart, got into the Envoy, and drove to a nearby gas station.[4] ECF No. 64 at 3. Law enforcement officers followed him. Cochran Test. He stayed in the car at the station for about 10 minutes, then drove north on

---

[3] Excell first called 757-236-6211, but got no response. Special Agent Cochran believed that he called 757-576-2843 the second time. Cochran Test.

[4] Graves remained in the foyer of the Wal-Mart. Copeland Test.

Hanover Street. *Id.* He held his cell phone to his ear as he drove. *Id.* At the same time, Excell, who was in a patrol car, received a call. *Id.*; ECF No. 1 ¶12.

ICE agents stopped the Envoy a few blocks later, ordered Johnson out of the car and handcuffed him. ECF No. 1 ¶13; Cochran Test. Johnson had a cell phone to his ear, which the agents seized. At that moment, Excell received a cell phone call. *Id.* ¶12. The call log showed that Johnson's phone had received a call from "Shp-Gavn," number 1-757-576-0399, Excell's phone number, at about 12:36 p.m. that day. *Id.*; Cochran Test. Johnson initially consented to a search of the Envoy, but soon said the car was not his and revoked consent to the search. ECF No. 1 ¶12; Cochran Test.

A Baltimore Police Department canine sniffed the vehicle with negative results.[5] HSI agents then searched the car, finding $8,000 cash under the lining of a child safety seat in the backseat. ECF No. 1 ¶12; Cochran Test.

HSI agents Alex Feres and Harry Freeman, and Officer Copeland, approached Graves at Wal-Mart, identified themselves, and asked her to leave the store to answer their questions. Copeland Test.; Testimony of Alexander Feres [hereinafter "Feres

---

[5] The dog could not conduct a full search because the car was filled with distracting trash and food. ECF No. 64 at 4.

Test."].[6] Graves agreed to speak with the officers and walked with them to a government car.[7] The agents told her she was not under arrest and did not have to speak with them.[8] Feres Test.; Copeland Test.; Freeman Test. The officers were not wearing bullet-proof vests or showing their weapons, and did not touch Graves. Feres Test. Feres asked Graves's consent to quickly look through her Wal-Mart bag and check her purse for weapons. *Id.* Freeman checked the purse, and removed her wallet to look for identification. Freeman Test.

Graves agreed to speak, and stated that she had come to Baltimore from Virginia that morning with Loxly Johnson, a drug trafficker, to meet someone from a cruise ship; that an unknown man had entered the Envoy earlier that day and given them three packages in return for $4,000, and that the "stuff" was in her purse.[9] Feres Test. Graves began to cry as she was arrested.

---

[6] Agent Freeman does not remember Officer Copeland being present at the initial encounter. Testimony of Harry Freeman [hereinafter "Freeman Test."].

[7] Graves asserts that she "was placed" in the vehicle. ECF No. 49 at 2.

[8] The government contends that because she was not under arrest, they did not give her *Miranda* warnings. ECF No. 64 at 5.

[9] Graves seems to deny that she agreed to speak or that she made these statements. ECF No. 49 at 3 ("Graves does not agree with . . . the Government's investigative reports. . . . [that] obtained allegedly incriminating admissions."-- Graves probably means that the officers allegedly obtained incriminating admissions).

*Id.* Feres read her *Miranda* warnings after she stopped crying, about ten minutes later. *Id.* She waived her rights orally and in writing. *Id.* The officers searched her purse after the arrest and found three duct-taped packages, similar to the ones Excell had, containing about 700 grams of heroin and 300 grams of cocaine. Feres Test.; ECF No. 29 ¶20.

Graves received several phone calls while with the agents; Feres asked if she could answer them, and when she said yes, he told her to answer. Feres Test. The first call was from a person in Virginia, stating that he was worried "Lox" had been arrested. ECF No. 29 ¶20. The second call was from Jamaica, asking Graves "if she had the package." *Id.* She told the caller she had it, but was stuck at Wal-Mart; he told her he would have someone pick her up. *Id.* Feres may have suggested Graves's answer. Feres Test.

On September 23, 2011, Excell pled guilty to count one of the superseding indictment. ECF No. 52. On October 6, 2011, Garth pled guilty to count one of the original indictment. ECF No. 56. On Monday, December 5, 2011, Neptune pled guilty. ECF No. 71.

On May 26, 2011, Johnson moved to suppress his statements and all evidence found in the Envoy. ECF No. 45. On May 27, 2011, Graves moved to suppress her statements to the police on December 18, 2010 and evidence seized from her purse, to sever

her trial, for a bill of particulars, for disclosure of all co-conspirator statements, for access to pertinent Pretrial and Probation reports, for restrictions on the use of plea and cooperation agreements, to preserve law enforcement notes, for individual and attorney voir dire, for extra preemptory challenges, and to adopt any pertinent codefendant matters. ECF No. 49.

II. Analysis

A.   Miranda Arguments

Graves moved to suppress her statements on the basis that she did not receive *Miranda* warnings, and her statements were involuntary. ECF No. 49 at 2.[10]

*Miranda v. Arizona*, 384 U.S. 436 (1966), requires the police to inform a suspect of her right to remain silent and the right to the presence of an attorney before any "custodial interrogation." 384 U.S. at 479. A suspect has been subjected to custodial interrogation if, under the totality of the circumstances, a reasonable person would not believe she was free to leave. *United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997). *Miranda* warnings are not required when a

---

[10] Johnson moves to suppress all statements he made to law enforcement officers on December 18, 2010 because he "was interrogated . . . without benefit of his *Miranda* rights and any statement made was not voluntary." ECF No. 45 at 1.   The government agreed not to introduce Johnson's statements. Accordingly, the motion to suppress statements will be denied as moot.

person is questioned during a *Terry*[11] stop. *United States v. Sullivan*, 138 F.3d 126, 130-32 (4th Cir. 1998). No fact is determinative: even if an officer tells the suspect she is not under arrest, that does not necessarily overcome other circumstances that indicate that she is not free to leave. *United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007). The conversion of a *Terry* stop to an arrest requires more than the reasonable belief that the detained person is not free to leave; investigative stops "customarily involve detentions." *Id.* at 1109. A *Terry* stop becomes an arrest if the stop lasts "longer than necessary to verify or dispel the officer's suspicion." *Id.*

A suspect is not in custody simply because law enforcement officers tell her they would like to question her, or speak to her inside a confined space like a vehicle. *Howard*, 115 F.3d at 1154 (officers offered suspect a ride, telling him they wanted to ask him questions; suspect accepted the ride and, at destination, made confessions; suspect was not under custodial interrogation). That a suspect answers questions in a police vehicle, with the doors and windows closed, does not necessarily create custodial interrogation. *United States v. Ford*, 401 F. App'x 852, 855 (4th Cir. 2010).

---

[11] *Terry v. Ohio*, 392 U.S. 1 (1968).

Feres asked Graves to leave the store to answer their questions. Copeland Test.; Feres Test. Graves agreed to speak with the officers and walked with them to their car. Feres told her she was not under arrest and did not have to speak with them. Feres Test.; Copeland Test.; Freeman Test. The officers did not wear bullet-proof vests, show their weapons, or touch Graves. Feres Test. Feres asked Graves if he could quickly look through her Wal-Mart bag and check her purse for weapons. *Id.* Graves consented to both inspections. Freeman checked the purse, and pulled out her wallet to look for identification. Freeman Test. As the evidence showed that the officers told Graves that she did not have to talk to them, did not use any physical force, draw or display their weapons, and told her that she was not under arrest, Graves was not subjected to custodial interrogation when she indicated there were drugs in her purse. *Ford*, 401 F. App'x at 855.

As Graves was not interrogated before she waived her *Miranda* rights, her subsequent statements will not be suppressed on the basis of the asserted *Miranda* violation. *See United States v. Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005) (stating standards for suppressing post-*Miranda* statements based on prior *Miranda* violations).

Graves also contends that any statements she made were involuntary. ECF No. 49 at 4. Graves does not explain her

10

contention, but states that the Court must weigh the
circumstances of the officer's pressure against the suspect's
ability to resist that pressure. *Id.* (*citing Stein v. New York*,
346 U.S. 428, 444 (2000)). The evidence showed that Graves
spoke with the officers voluntarily, and knowingly and willingly
waived her *Miranda* rights. Feres Test. The statements will not
be suppressed.

B.   Fourth Amendment Arguments

Johnson moved to suppress "the recovery of any evidence
including the alleged recovery of $8,000 . . . from the GMC
Envoy." ECF No. 45 at 1. Johnson argues that the government
lacked consent or probable cause to search the Envoy, arrest
him, and search his phone. *Id.* Graves moved to suppress the
drugs seized from her purse because the government lacked a
warrant, and Graves's admission that narcotics were in her purse
was obtained in violation of *Miranda* and her rights against
self-incrimination and to an attorney. ECF No. 49 at 4-5.

1.   Search of Johnson's Phone

The government contends that it searched Johnson's phone
incident to his lawful arrest. Johnson argues that the ICE
agents lacked probable cause to arrest him, and accordingly, the
arrest and incident search were invalid.

Law enforcement officers may arrest a person and search him
incident to the arrest when, considering all the circumstances,

11

there is probable cause to believe that person is committing or has committed a felony. *Illinois v. Gates*, 462 U.S. 213, 230-31. Officers may seize cell phones incident to an arrest and "retrieve text messages and other information" without a search warrant. *United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009). Probable cause means a "fair probability" that Johnson had committed or was committing a felony at the time of the arrest. *United States v. Moses*, 540 F.3d 263, 268 (4th Cir. 2008).[12]

The evidence at the hearing showed that when the officers arrested Johnson, they knew that: (1) Excell, who had been caught with about one kilogram of drugs on his person, was planning to deliver the drugs to a man called "Tony" in the Wal-

_____

[12] In *Moses*, a co-conspirator told police officers that Moses was an enforcer for the conspiracy, that he carried guns, kept narcotics and guns at his home, and drove a green Lincoln with temporary tags. 540 F.3d at 266. Officers saw Moses place boxes in the car described, leave the car, then return with a female companion. After arresting Moses for driving with a suspended license, officers searched him and found marijuana. *Id.* Moses had attempted to call someone in the residence he had left before being arrested. Concerned that he was telling someone in the home to destroy contraband, officers went to the apartment (Moses denied living in the apartment but a cousin who lived downstairs stated that he lived there) and used a key they found on Moses to confirm that he had access. Worried that someone might be in the apartment, destroying evidence, the officers entered without a warrant. *Id.* They conducted a protective sweep and saw drug residue. *Id.* The Fourth Circuit held that the officers had probable cause to search the apartment because the officers reasonably concluded that the apartment "probably contained contraband or evidence of a crime." *Id.* at 269.

Mart parking lot and claimed that other crew members were making similar deliveries; (2) one of the contact numbers for "Tony" was a Norfolk, Virginia number registered to a Latoya Johnson; (3) the only car with Virginia tags in the Wal-Mart parking lot (the Envoy) was also registered to Latoya Johnson; (4) Johnson and Graves had been sitting in that car in the Wal-Mart parking lot or looking at the parking lot from inside the store for two hours without buying anything at about the time Excell was to deliver the drugs; (5) while they were in the Envoy, an unknown man--who later got into a cruise ship van--entered the car for a few moments bent over as if removing something from his shoes, (such as a shoe insert like the ones Excell used to carry drugs), then quickly left; (6) Graves moved the Envoy to another part of the parking lot; (7) another person wearing cruise ship apparel was conducting counter-surveillance on the parking lot and standing next to Johnson and Graves at the Wal-Mart entrance; (8) soon after "Tony" told Excell that he was leaving Wal-Mart, Johnson drove away from the parking lot; (9) Johnson drove to a gas station, but never bought gas or used the mini-mart; and (10) when officers stopped Johnson, Excell had just called "Tony" and Johnson had his cell phone to his ear. Hearing Testimony.

The totality of these circumstances--Johnson's spending nearly three hours at Wal-Mart without purchasing anything,

13

apparently waiting for someone, his interaction with Garth, another cruise ship employee, first at the driver's side window of the Envoy and then in the car as Garth appeared to remove something--such as a drug pack--from his shoes, and the alignment of the calls from Excell with Johnson's actions-- saying he needed to leave Wal-Mart just as he drove away, holding his phone to his ear as Excell called him immediately before the stop--establish more than a fair probability that Johnson was involved in the drug conspiracy. The arrest was lawful and the search proper. The motion will be denied.

2.    Search of the GMC Envoy

The government contends that Johnson (1) lacks standing to challenge the search of the Envoy because it did not belong to him, and the search was valid (2) incident to Johnson's arrest and (3) based on probable cause to believe the vehicle contained narcotics. ECF No 64 at 8.

The search was valid under the automobile exception to the warrant requirement because the government had probable cause to believe the car contained narcotics. *United States v. Dickey-Bey*, 393 F.3d 449, 456-57 (4th Cir. 2004). As with probable cause to arrest, the government need only establish a "fair probability" that it would find contraband or evidence of a crime in the Envoy to establish probable cause to search. *Moses*, 540 F.3d at 268.

14

In addition to the evidence that provided probable cause to arrest Johnson, listed above, officers saw from Johnson's cell phone call log that he had just received a call from a person he listed as "Shp-Gavn," tied to the cell phone number for Gavin Excell, a cruise ship employee. Hearing Testimony.

Considering all the circumstances, there was a fair probability that the Envoy contained evidence of a crime. *See Dickey–Bey*, 393 F.3d at 456-57; *Moses*, 540 F.3d at 268. The motion to suppress the money found in the car will be denied.

### 3. Search of Graves's Purse

The government contends that Graves's confession that she had drugs in her purse created probable cause to arrest her, and the search was legally conducted pursuant to the arrest. ECF No. 64 at 11. Law enforcement officers may make a warrantless arrest and search the arrested person incident to that arrest when there is probable cause to believe a felony is being or has been committed by that person. *Gates*, 462 U.S. at 230-31. The search incident to arrest may occur immediately before the arrest. *United States v. Miller*, 925 F.2d 695, 698-99 (4th Cir. 1991). It can include a search of the arrested person's bags or purse. *United States v. Han*, 74 F.3d 537, 542 (4th Cir. 1996). As Grave's confession was voluntary and not in response to custodial interrogation, the arrest and search incident to the arrest were valid. The motion will be denied.

15

C.    Graves's Motion to Sever

Graves moved to sever her trial from Johnson's trial to avoid prejudice. ECF No. 49 at 5. She contends that the evidence against Excell, Garth, and Neptune is "prejudicially disproportionate [and] will swamp her defense."[13]  ECF No. 49 at 5.  The government did not address the motion. *See* ECF No. 64.

Under Fed. R. Crim. P. 14(a), the Court has discretion to sever the defendants' trials if a single trial may prejudice a defendant.  The Court should only grant a severance if there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Disproportionate degrees of alleged culpability may increase the risk of prejudice to the allegedly less culpable defendant. *Id.*

Generally, people "indicted together . . . for conspiracy[] should be tried together." *United States v. Tipton*, 90 F.3d 861, 883 (4th Cir. 1996).  That a co-conspirator "c[a]me late to the conspiracy or . . . varied his level of participation in it from time to time" does not justify severance. *Id.*

Most of Graves's concerns are moot because the three defendants about whom she expressed most concern--Garth, Excell,

---

[13] Graves alternatively moved for severance only from Garth.  ECF No. 49 at 8.  As Garth has pled guilty, that motion will be denied as moot.

16

and Neptune—will not be co-defendants at trial. Graves notes that Johnson also allegedly played a larger role than she in the conspiracy. ECF No. 49 at 7. She contends that the government "views [her] as . . . little more than a bystander." *Id.* This does not rise to the level of prejudice that *Tipton* requires to justify severance. *See* 90 F.3d at 883. Accordingly, the motion to sever will be denied.

D.   Graves's Motion for Bill of Particulars

Graves moves for a bill of particulars pursuant to Fed. R. Crim. P. 7(f) specifying: (1) the duration of the alleged conspiracy, (2) the names, addresses and telephone numbers of unindicted co-conspirators, (3) the roles played by each named and unnamed conspirator, (4) a description of each drug transaction Graves facilitated, participated in, or was present for, other than the one in the superseding indictment, (5) all statements Graves made, or that are concerning or attributable to Graves in furtherance of the conspiracy. ECF No. 49 at 9. The government has not responded to the motion. *See* ECF No. 64.

Under Fed. R. Crim. P. 7(f), the court "may direct the government to file a bill of particulars." The defendant may move for a bill at any time if the court permits it, but always within 14 days after arraignment. Fed. R. Crim. P. 7(f). The Court has broad discretion to decide whether to order a bill of particulars. *Will v. United States*, 389 U.S. 90, 98-99 (1967).

17

A bill of particulars is appropriate when an indictment fails (1) to provide adequate information to allow a defendant to understand the charges and (2) to avoid unfair surprise. *See United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1047 (4th Cir. 1987).

Providing discovery is not a basis for a bill of particulars. *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) ("A bill of particulars is not to be used to provide detailed disclosure of the Government's evidence in advance of trial.").

The superseding indictment allows the defendants to understand the charges. It states the controlling statutes, relevant dates, and facts supporting the charge.

Graves argues that she needs the requested information to build a complete defense. Graves contends that the government may present evidence of a broader conspiracy involving $94,000 worth of cocaine and heroin found on the cruise ship a few weeks after Excell was arrested. ECF No. 49 at 7 n.1. This information relates to the government's evidence, not the charges against her; a bill of particulars is not an appropriate vehicle for this request. *See Automated Med. Labs.*, 770 F.2d at 405.

Graves also contends that she has a right to "be informed of her own statements made during and in furtherance of a conspiracy under Fed. R. Crim. P. 16, even if not made to law

enforcement officers." ECF No. 49 at 11 (*citing United States v. Roberts*, 811 F.2d 257, 258 (1987)). This is a discovery request,[14] for which a bill of particulars is inappropriate.

The criminal complaints provide some of the requested information and suggest that the remaining information is not available. ECF Nos. 1, 7, 11, 28, 29. The Complaints suggest that the government is not aware of co-conspirators other than the five defendants in this case. *See, e.g.*, ECF No. 11.[15] In light of the evidence available to Graves, a bill of particulars on the eve of trial is not necessary.

The motion for a bill of particulars will be denied.

---

[14] Under Fed. R. Crim. P. 16(a)(1)(A), the government must give the defendant

> the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

*Roberts* held that Rule 16(a)(1)(A) applies to statements "made by the defendant . . . not . . . made by co-conspirators." 811 F.2d at 258. Contrary to Graves's assertion, the Fourth Circuit did not suggest that the rule pertains to statements not made to law enforcement officers. That question was not raised or considered in *Roberts*. *See id.*[14] Graves is also not entitled to discovery of statements concerning or attributable to her. *Id.*

[15] At the hearing, the Court confirmed that the government has provided all evidence required by Fed. R. Crim. P. 16.

19

E.    Disclosure of Co-Conspirator Statements

Graves requests disclosure of all non-exculpatory statements of co-conspirators who are not prospective witnesses[16] and related government interview reports.  ECF No. 49 at 12-13. At the hearing, the government stated that it has provided all statements and interview notes in its possession.  Accordingly, the motion will be denied as moot.

F.    Pretrial and Presentence Reports of Government Witnesses

Graves requested that the government "be required to provide the defense with copies of any Pretrial Services Reports and Presentence Reports of government witnesses" and alleged co-conspirators whose statements the government plans to introduce against Graves.  ECF No. 49 at 13.  The government has not addressed this motion.  See ECF No. 64.

Graves notes that she is entitled to all witnesses' criminal histories but requests that the government provide it in the form of witness Presentence Reports because they are better organized than computer records from each jurisdiction of conviction.[17]  ECF No. 49 at 14.  Graves provides no authority

---

[16] Graves notes that the government "recognize[s] its obligations to provide Jenks statements of prospective witnesses and exculpatory material.  ECF No. 49 at 12.

[17] She also requested that the government provide the information during discovery rather than one week before trial—the time

for the contention that she is entitled to the information in this form. *See id.*

Graves contends that she is entitled to all of the remaining information in Presentence Reports under the Jencks Act. ECF No. 49 at 15 (*citing* 18 U.S.C. § 3500). Graves recognizes that Presentence Reports contain sensitive information not generally publicly available. *Id.* She argues that the executive branch has access to the reports and should be required to provide them to her. *Id.*

Presentence Reports in the possession of a Court Probation office are not "in the possession of the United States" under the Jencks Act. *United States v. Bourne*, 743 F.2d 1026, 1032 (4th Cir. 1984). If the "United States" has the witnesses' Presentence Reports, the government should submit them to the Court for *in camera* review, and the Court will unseal and order the government to release exculpatory or impeaching portions of the reports. *United States v. Mudie*, 125 F.3d 849 (table), 1997 WL 633232 at *3 (4th Cir. 1997).

G.    Testimony of the Terms of Plea Agreements

Graves moved to exclude all testimony and discussion of the terms of witnesses' plea agreements, particularly provisions that require the witness to "give complete and truthful

period agreed to in the discovery agreement. ECF No. 49 at 14. As trial began Tuesday, this aspect of the request is now moot.

testimony or recite the consequences of his not doing so." ECF No. 49 at 15. The government states that, if it calls cooperating witnesses, "it will abide strictly with the Rules of Evidence and all pertinent [F]ourth [C]ircuit case law relevant to that type of evidence." ECF No. 64 at 12.

> [P]resenting evidence on a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching. Use of the truthfulness portions of a plea agreement becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony.

*United States v. Collins*, 401 F.3d 212, 216 (4th Cir. 2005) (internal quotation marks and citation omitted). Graves is not entitled to exclusion of all terms of the plea agreements; the motion will be denied.

     H.    Preservation of Law Enforcement Notes

Graves moved for an order requiring the government to direct law enforcement officers to preserve all notes of relevant interviews and activities. ECF No. 49 at 16. The Government has contacted "the pertinent agents" and asked them to give all notes about this case to the Office of the United States Attorney's Office. ECF No. 64 at 11. The government has provided copies of all notes it received and given them to defense counsel. *Id.* Accordingly, the motion will be denied as moot.

I.   Voir Dire

Graves asked the Court to "question each prospective juror individually and out of the presence of the other prospective jurors, and for leave to conduct attorney voir dire." ECF NO. 49 at 17.  Graves contends that individual questioning will "identify predetermined ideas and prejudices." *Id.*  The Court's practice of asking "nosy" questions individually probably addresses this concern.

Graves asserts that the attorneys "who have a trial theme . . . and are most familiar with the evidence . . . are best equipped to ask voir dire questions," particularly in this case, which received "significant publicity." *Id.* at 18.  Graves has submitted her proposed voir dire to the Court.  ECF No. 62. Graves does not explain why her proposed voir dire questions would be insufficient.  The motion was denied.

J.   Additional Peremptory Challenges

Graves requested additional peremptory challenges so she would not have to share 10 peremptory challenges with her co-defendant.  ECF No. 49 at 18-19 (*citing* Advisory Committee Note to Fed. R. Crim. P. 24).  The Court has broad discretion to give the defendants additional peremptory challenges.  1944 Advisory Committee Note to Fed. R. Crim. P. 24(b); *United States v. Potts*, 420 F.2d 964, 964-65 (4th Cir. 1970).  As there are only

two defendants in this case, it was unnecessary to grant extra peremptory challenges. The motion was denied.

K.    Adoption of Co-Defendant Motions

Graves moved to adopt all co-defendant motions for which she has standing. ECF No. 49 at 19. Graves, who did not own the Envoy when it was searched, lacks standing to challenge that search. *Rakas*, 439 U.S. at 134. Similarly, she lacks standing to move to suppress statements Johnson made; his constitutional rights are personal. *Cf. id.* The motion will be denied.

III. Conclusion

For the reasons stated above, Johnson's motion to suppress statements and evidence will be denied. Graves's motions to suppress statements and evidence, sever, for a bill of particulars, disclosure of non-witness co-conspirator statements and interview notes, to exclude testimony about the terms of plea agreements, and to adopt Johnson's motion will be denied. Her motions for attorney voir dire and additional challenges were denied.

_____
Date

_____
William D. Quarles, Jr.
United States District Judge

24